## HAY *vs.* LEIGH and others.

By the terms of a contract between the parties, the plaintiff sold, and the defendants purchased, " two boat loads western mixed corn in B.'s stores, Clinton wharf, ex boats Spencer and Galt, at 89 cents per bush. of 56 lbs., in store No. 1, bins 3, 4 and 5." Six boat loads of corn of the same quality and description had been placed and mixed together, in those bins, previous to the sale, four of which had been sold. It was proved that it was customary, in selling by the boat load, to designate the boats from which the corn was received into the store, for the purpose of fixing the quantity; that corn from each boat was weighed when received, and mixed with other corn of the same quality, and the name of each boat, and the quantity it contained, was marked upon the bins; so that in selling a specific boat load, the quantity and quality only were represented, and not the identity of the corn brought by such boats. The sale was by sample, taken from these bins, and the bulk in the bins was inspected by the defendants' agents, compared with the samples, and found satisfactory. The bins 3, 4 and 5, when filled with the six boat loads, had burst, on one side, and about one hundred bushels of the corn had fallen into the passage way, whence. it was removed, temporarily, to the front side of another bin, in the rear of which was some other corn; the two parcels being separated by a partition, and not coming in contact with each other. The same identical corn so removed was afterwards returned to the bins from which it had been taken.

*Held* 1. That although the defendants purchased by sample from the bulk of corn in the bins, 3, 4 and 5, they had not purchased the identical corn taken

into the bins from the boats Spencer and Galt. That the words "ex boats Spencer and Galt," were not necessarily, in the light of the evidence, a guaranty that the corn was taken from those boats.

2. That there being no means of determining from the face of the broker's bought and sold notes that these words indicated the quantity or quality of the corn, there was, in this respect, a latent ambiguity, and evidence was properly received in explanation.

3. That the judge was correct in refusing to charge that the defendants had purchased some particular boat load of corn, or that the contract did not mean the quantity and quality of corn brought by the particular boats.

4. That there being no proof that other corn was mixed with that sold, the testimony did not warrant the submission by the judge of the proposition that the defendants had purchased a specified bulk of corn in certain bins, and if other corn was mixed with it, that the plaintiff could not recover.

5. That an instruction to the jury that the defendants were bound to receive the corn if it were of the same quality and quantity with that contained in the boats Spencer and Galt, and that it was not material that it was not in the bins 3, 4 and 5 at the time of the contract, was not to be understood as an instruction that upon a sale of a particular article, another, of the same quality and quantity, must be received in fulfillment of the contract, if tendered for that purpose. That such a rule could not be sustained, although it might be impossible to appreciate, in damages, the actual difference.

6. That the plaintiff having tendered the corn, by offering to transfer the storage receipt therefor, there was no ground for the pretense that the offer to deliver was not of the same corn which was sold, as understood and intended by both parties.

APPEAL by the defendants from a judgment entered upon the verdict of a jury. The plaintiff, on 24th March, 1863, through a broker, sold to the defendants two boat loads western mixed corn in Barber's stores, Clinton wharf, *ex Spencer* and *Galt*, at eighty-nine cents per bushel in store No. 1, bins 3, 4, 5. The corn was parcel of 118,000 bushels purchased by the plaintiff from Dows & Co. in December, 1862, embracing twenty different boat loads, and contained in twelve bins in Barber's stores. The bins in question (3, 4, 5) contained the cargoes of six boats, viz. the *Van Buren, Spencer, Galt, Elmer, Dayton* and *Eltes*. These different boat loads of corn were of the same quality and kind, and, according to the custom and usage, were placed in the bins 3, 4 and 5, which

were thrown into one bin by taking down the moveable partitions. When the boats discharge their cargoes into the warehouse they are measured, and the name of the boat and the number of bushels entered in a book, and the names of the boats chalked on the front of the bins, and a receipt given specifying the names of the boats and the number of bushels. Sales of corn are always made by sample. The names of the boats are referred to, to designate the quantity of corn sold, which is ascertained by a reference to the warehouse register. When a sale is made, the storekeeper is notified, and he indorses the quantity on the original receipt, and issues to the purchaser a new receipt, and, unless it is removed, holds the corn thereafter for his account. To obviate repeated measuring and diminution by shrinkage or other natural causes, the warehouseman for a consideration guaranties the quantity, and the receipt so guarantied is used and transferred as one of the evidences of title. In the present case, the 118,000 bushels purchased from Dows & Co., although it consisted of twenty boat loads, and was in twelve bins, was all of the same quality, and was only kept separate for convenience. The bins 3, 4, 5, were thrown into one bin, and contained the loads of the six boats named. Samples had, from time to time, been taken, and sales made, and the names of the boats being referred to, to designate the quantities, there remained at the time of the contract on 24th March, 1863, only enough to correspond in quantity with the boat loads of the *Spencer* and *Galt*.

The making of the contract was proved by Hall the broker, and by the bought and sold notes produced by him on the trial. After the contract, the plaintiff made the usual delivery order on the warehouseman, who ascertained the quantity of corn in the boat loads mentioned in the contract, and which was 14,270$\frac{12}{56}$ bushels, and made a receipt stating that it was held subject to the order of the defendant, and this receipt was, with the bill, sent by the plaintiff to the defendants on the 25th of March, 1863, who refused to accept it.

This was the customary and usual mode of delivering corn, and the fact was not contested on the trial. The complaint alleged, that after the defendants refused to receive the corn, the plaintiff, on due notice to the defendants, sold the corn at the Corn Exchange for eighty-six cents per bushel, which was the best price which could be had. That the net proceeds of the said sale, after deducting the usual and customary charges for brokerage, commission and weighing, amounted to the sum of $12,058.33, leaving a deficiency of $642.16 between the proceeds of said sale and the value of said corn at the contract price aforesaid, which sum, with interest and costs, the plaintiff claimed to recover.

The two points of defense raised on the trial were :

1. That the defendants were entitled to the identical bushels of corn which came on the boats *Spencer* and *Galt.*

2. That after the sale and before the tender, one hundred bushels of corn of inferior quality had been transferred from another bin to the bins named in the contract.

The jury found a verdict in favor of the plaintiff, for $417.42 ; for which sum, with costs, judgment was rendered.

*G. Dean,* for the appellants.

*J. E. Burrill,* for the respondent.

*By the Court,* LEONARD, J. The counsel for the defendants requested the judge at the circuit to charge the jury that the defendants had purchased two boat loads of corn, arriving by two specified boats, stored in a particular place, and that they were entitled to have that identical corn ; and that the contract did not mean the quantity and quality of corn brought by the said boats. (*See requests* 1 *and* 2.) He was also requested to charge that the sale was by sample from specific corn, and, if the testimony of certain witnesses was true, that other corn was mixed with that from which the sample was taken, after the sale to the defendants, and

before the time of the tender of the corn, that they were not bound to comply with the plaintiff's demand of payment. Also that the defendants had purchased a specified bulk of corn in certain bins, and if other corn was mixed with it, that the plaintiff could not recover. (*See 5th and 6th requests.*) The above is a substantial statement of the requests made to the judge, which he refused to charge, and to such refusal the defendants' counsel duly excepted.

By the terms of the contract the plaintiff sold and the defendants purchased, "two boat loads western mixed corn, in Barber's stores, Clinton wharf ex boats *Spencer* and *Galt*, at 89 cents per bush. of 56 lbs. in store No. 1, bins 3, 4 and 5." It appeared from the evidence that six boat loads of corn of the same quality and description had been placed and mixed together in those bins some months before the sale, and that the defendants knew it. It was also in evidence that it was customary, in selling by the boat load, to designate the boats from which the corn was received into the store, for the purpose of fixing the quantity. That corn from each boat was weighed at the time it was received, and mixed with other corn of the same quality, and the name of each boat, and the quantity it contained, was marked upon the bins : so that in selling a specific boat load under such circumstances, the quantity and quality only were represented, and not the identity of the corn brought by such boats. Four of the six boat-loads originally contained in bins 3, 4, and 5, had been sold and delivered prior to the sale to these defendants.

The sale was by sample taken from these bins, and the bulk in the bins was inspected by the defendants' agents, compared with the samples, and found satisfactory.

While the defendants' agents were inspecting the corn, they saw some corn taken from another bin in the same store and put into bins 3, 4 and 5, with the corn there stored. It appeared that there was a large quantity of corn at the farther part of the bin from which the removal was being made

which had been heated and was of an inferior quality to
that in bins 3, 4 and 5. The defendants relied upon this
evidence to show a mixing, either fraudulent or accidental,
of inferior corn with that sold to them. It was however
fully explained by uncontradicted evidence, wholly consistent
and in harmony with the facts relied on by the defendants to
show the injurious mixing. The bins 3, 4 and 5, when filled
with the six boat loads, had burst the planks on one side,
and a portion of the corn, about 100 bushels, had fallen into
the passage way, from whence it had been removed to another
bin, (No. 7,) then only partly occupied, with other corn,
and piled separately until the broken bins were repaired.
The same identical corn so removed was returned to the bins
from whence it was taken ; and it is probable that the de-
fendants' agents saw the laborers engaged in placing it. The
evidence is positive, and not contradicted, that it was the
same corn which had been removed, and none other, which
was again put into the bins 3, 4 and 5. It was undoubtedly
true that the defendants had purchased by sample from the
bulk of corn in the bins 3, 4 and 5, but not the identical
corn taken into the bins from the boats *Spencer* and *Galt.*

The words "ex boats *Spencer* and *Galt,*" were not neces-
sarily, in the light of this evidence, a guaranty that the corn
was taken from those boats. There were no means of deter-
mining from the face of the broker's bought and sold notes,
that these words indicated the quantity or quality of the
corn. In this respect, there was a latent ambiguity, and
evidence was very properly received in explanation. It is
made entirely certain that those two boat loads were not
stored by themselves in the three bins mentioned, and that
the parties understood the transaction as a sale by sample ;
the reference to the boats, and the locality where the corn
was stored, being for the purpose of fixing the quantity, and
further qualifying the legal effect of the exhibition of the
sample. A certain time is allowed by custom, for inspecting
the bulk of corn sold, and if the purchaser finds it not to

Hay *v.* Leigh.

compare satisfactorily with the sample, he is at liberty to retire from the sale, notwithstanding the delivery of the bought and sold note of the broker.

It appears to me entirely clear that the judge was correct in refusing to charge that the defendants had purchased some particular boat loads of corn, or that the contract did not mean the quantity and quality of corn brought by the particular boats, as requested by the first and second propositions submitted by the defendants.

The testimony did not warrant the submission by the judge of the other propositions now under consideration, (*5th and 6th requests.*) There was no testimony that other corn was mixed with that sold. There was evidence which, if not explained, would warrant that conclusion; but the explanation was given; and it was wholly inconsistent with the facts introduced in evidence to establish the conclusion insisted on by the request, and was not contradicted by any other evidence. The judge could not be required to assume or submit an hypothesis which had been proven to have no foundation in fact. Both of these latter requests contain the unsupported hypothesis that there was evidence to be submitted to the jury that corn of an inferior quality had been mixed with that sold by sample, after that sale had been made.

The judge instructed the jury that the defendants were bound to receive the corn if it were of the same quality and quantity with that contained in the *Spencer* and *Galt*, and that it was not material that it was not in the bins 3, 4 and 5, at the time of the contract.

This is not to be understood as an instruction, that upon a sale of a particular article, another of the same quality and quantity must be received in fulfillment of the contract, if tendered for that purpose. Such a rule could not, I think, be sustained; although it might be impossible to appreciate, in damages, the actual difference. Such a delivery would not strictly hold the rule of good faith to the purchaser.

In this case, there is no ground for a just pretense that the offer to deliver was not for the same corn which was sold, as understood and intended, by both parties. The seller did not know that any of it had been, even temporarily, removed. The effect of restoring the corn to the original bins was to preserve the quantity sold. Had it not been replaced, the quantity would have been less than the two boat loads designated. The quality was also identical. It was indeed part and parcel of the article agreed and understood to be sold. The instruction has reference to the fact that corn, the cargo of six boats, of the same kind and quality, had been stored together in those bins, and that the contract called only for the corn there stored of the quantity and quality of that from the *Galt* and *Spencer*, and to the temporary removal of a portion of it from the said bins. The instruction was applicable to the facts as they actually existed, and had no tendency to mislead the jury. Any error of the jury, in this respect, was prevented by the instruction given by the judge, that if the one hundred bushels were of inferior quality, the defendants were not required to take it.

The judge was requested, but refused, to charge that the notice of sale was premature ; that it was invalid, because the sale was not public ; that the tender of the corn was insufficient, because the sum demanded in payment included alleged charges for weighing ; that the sale was not on the defendants' account, because notice was not given of the time, manner and place of sale, and because the sale was for cash up ; that the rule of damage is the difference between the contract price and the market value, including only one charge for weighing.

The notice of sale is not furnished. It is alleged in the complaint that due notice was given, and the allegation is not denied by the answer. It is to be held that the notice was sufficient.

The tender of the corn was by an offer to transfer the storage receipt. The bulk of the article precluded a manual

Hay *v.* Leigh.

delivery. The evidence shows that the price obtained on the sale made for the defendants' account, was as favorable as ruled on the day of sale, at the Corn Exchange. The tender, manner of sale, and the rule of damages, appear to be the same as that adopted and sanctioned by the Court of Appeals, in *Pollen* v. *Le Roy*, (30 *N. Y. Rep.* 549.)

The verdict was for $417.42, being at a rate a trifle less than three cents per bushel. The contract price was eighty-nine cents, and the price obtained on the sale for the account of the defendants' was eighty-six cents per bushel—a loss of three cents. The account of the damage, as made up and demanded of the plaintiffs, does not appear in the case. It is quite evident that the jury did not adopt the rule claimed by the plaintiff given to them by the court. Either rule would produce a larger verdict. The rule given by the court was the difference between the purchase price, and the price which he could procure on the day of the sale. Whether the plaintiff demanded any thing for the expenses of weighing the corn, I find nothing in the case to enable me to decide. No reference to testimony on the subject has been given. It appears by the case in 30 *N. Y. Rep.* that the expenses of a resale was a proper item of damage. The recovery being less than the damage proven, arising from the fall in price, I think the defendants can have sustained no injury from the refusal to charge the rule of damage precisely as requested. The verdict is for a less sum than the difference between the purchase price and the market price on the day of sale, and includes nothing for expenses. A motion for a new trial was denied at special term.

The judgment and order should be affirmed, with costs.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, J. F. Barnard* and *Ingraham,* Justices.]